UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | |
| BALCHEM CORPORATION and | : | |
| ALBION LABORATORIES, INC. | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| DANIEL TODD EDWARDS and | : | |
| MIL AGRO, INC., | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

This is the second suit by Balchem Corporation ("Balchem") and its subsidiary Albion

Laboratories, Inc. ("Albion") (collectively, "Plaintiffs") against Albion's former director of sales

and marketing, Daniel Todd Edwards ("Edwards"). Plaintiffs brought claims against Edwards in

November 2016 (the "2016 Lawsuit"), arising from Edwards' use of Balchem's trade secrets and

confidential information to develop a competing business selling plant nutrition products to the

agricultural industry. The parties resolved the 2016 Lawsuit by entering into a Mutual General

Release and Settlement Agreement (the "Settlement Agreement") and an Addendum and

Modification Agreement to Edwards's Confidentiality, Non-Solicitation and Non-Competition

Agreement (the "CNNA") (the "CNNA Addendum"). Edwards represented he desired to

develop, produce, and sell "Biostimulant" products, as distinct from Albion's business of

developing, producing, and selling mineral amino acid based products for plant nutrition.

However, in breach of the Settlement Agreement and contrary to Edwards's

representations in settling the 2016 Lawsuit, he and his company, Mil Agro, Inc. ("Mil Agro"),

have, among other things, manufactured and sold products using Balchem's and Albion's trade secrets and confidential information and made false and misleading statements in the advertising of products to consumers.  In the CNNA Addendum Edwards expressly agreed that it would be a breach of the CNNA and the CNNA Addendum "if any entity in which he has an ownership interest or by which he is employed or engaged takes any action that would be a breach of the CNNA and the [CNNA] Addendum."  This conduct has caused Balchem and Albion damages and threatens to irreparably harm Balchem and Albion.

**Parties**

1.     Plaintiff Balchem is a Maryland Corporation whose principal place of business is 52 Sunrise Park Road, New Hampton, New York.  For jurisdictional purposes, Balchem is a citizen of Maryland and New York.

2.     Plaintiff Albion is a Utah corporation whose principal place of business is in Layton, Utah. Albion is a wholly-owned subsidiary of Balchem (where appropriate hereinafter, Balchem and Albion are collectively referred to as "Balchem").

3.     Defendant Daniel Todd Edwards ("Edwards") is a resident of 875 West 300 North, Hyrum, Utah 84319.

4.     Defendant Mil Agro, Inc. ("Mil Agro") is a Utah corporation whose principal place of business is in Hyrum, Utah.  Edwards formed a corporation called Mil Agro, Inc. to produce, market, and sell products that compete with Balchem.  Edwards is the registered agent, treasurer, director, president, and secretary of Mil Agro.  On information and belief, Edwards is the only executive and the only director of Mil Agro and Edwards owns a controlling interest in Mil Agro.

**Jurisdiction and Venue**

5.       This Court has personal jurisdiction over Edwards by virtue of his consent to

jurisdiction in the CNNA, paragraph 8 of which provides, "The parties, being desirous of having

any disputes resolved in a forum having a substantial body of law and experience with matters

contained herein, agree that any action or proceeding with respect to this Agreement shall be

brought . . . in the United States District Court for the Southern District of New York, and the

parties agree to the jurisdiction thereof" and over Mil Agro as a result of Edwards' agreement

that a business established by him would be bound by the  CNNA and the CNNA Addendum.

Edwards confirmed and ratified his agreement to this Court's personal jurisdiction over him in

Section (3) of the CNNA Addendum.

6.       The Court has personal jurisdiction over Mil Agro at least because Mil Agro is

"closely related" to Edwards and it is foreseeable that Mil Agro would be bound by the forum

selection clause of the CNNA.

7.       This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. §

1836(c) because this action is brought under Section 1836.

8.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 because this action arises under the laws of the United States.  The Court has supplemental

jurisdiction over the all of the state law claims asserted herein because those claims are part of

the same case or controversy as the federal claims asserted herein.

9.       Venue is appropriate in this Court because Balchem and Edwards agreed that any

action or proceeding with respect to the CNNA would be brought in the United States District

Court for the Southern District of New York.  Balchem and Edwards confirmed and ratified their

agreement to venue in this Court in Section (3) of the CNNA Addendum.  Venue is appropriate

in this Court for the claims by Balchem against Mil Agro because the claims by Balchem against

3

Mil Agro arise from a common nucleus of operative facts as the claims by Balchem against Edwards, and as a result of Edwards agreement that a business established by him would be bound by the CNNA and the CNNA Addendum.

**General Factual Allegations**

10.     Balchem is a world leader in agricultural nutrition products including amino acid chelated mineral nutrition for plants.  Balchem's subsidiary, Albion, has been selling foliar applied formulations of chelated minerals since 1976.  For over fifty-five years, and continuing today, Balchem/Albion invested significant time, expense, and resources to develop unique, industry-leading plant nutrition products.

11.     Balchem's Metalosate® product line is designed for foliar application to plants to prevent or correct nutrient deficiencies that may limit crop growth and yields.  Metalosate® products are available as both an organic soluble powder and a conventional liquid foliar application.

12.     Balchem's specialty agricultural products are more effective at delivering plant nutrition than their competitors because of their proprietary specialized product formulation. Among other things, Balchem's formulation allows for efficient absorption of the minerals, allowing lower application rates by growers.  Balchem's competitors are not aware of this secret formulation.  The secret formulation therefore gives Balchem an advantage over its competitors who do not know or use it.

13.     Balchem manufactures the Metalosate® organic soluble powder formulations using a secret methodology.  Balchem's secret methodology gives Balchem a significant competitive advantage over competitors who do not know the methodology.  Among other things, the methodology allows Balchem to manufacture and market a powder form of the Metalosate® formulations that are certified organic.

4

14.     Balchem's competitors' organic formulations available in the marketplace are generally liquids.  Balchem's Metalosate® organic soluble powder formulation is the only foliar mineral nutrient powder formulation of consequence available in the marketplace.

15.     Balchem takes extensive measures to protect the secrecy of its product formulations and other trade secrets because these secrets are a primary reason for Balchem's competitive edge.

16.     The secret formulations are not known outside of Balchem.  Even within Balchem, the precise formulation and methodology of production is only known to those employees who need to know that information for their work at Balchem.

17.     All information regarding Balchem's proprietary manufacturing methodology and formulations are kept in the strictest confidence.  Even information regarding the product's efficacy related to the formulation is kept from Balchem's customers.

18.     The formulation and production methodology is also kept secret from most of Balchem's own employees.  Balchem's product formulations exist within the company on a protected computer system, and only employees who need access to the formulation to perform their job functions have access to the system.

19.     Another source of Balchem's competitive advantage is its proprietary customer and supplier information including, without limitation, the identities and characteristics of its customers and suppliers, the quantities and prices associated with past transactions, and the terms of its ongoing relationships with its customers and suppliers.

20.     Balchem customer and supplier information is not known outside of Balchem's business, and they are not reasonably ascertainable by third parties.

21.     The confidential customer and supplier information is not generally accessible to all employees but rather is available only to employees who need access to the information to perform their job functions.

22.     Balchem employees are required to receive training on, and acknowledge, Balchem's Trade Secret and Confidential Information Policy.  This document is in addition to the confidentiality covenants contained in any employment agreement the employee had with Balchem.

23.     Balchem employees are directed to take reasonable measures to physically secure areas where trade secrets and confidential information are kept, including locking desks, offices, filing cabinets, and other areas where trade secrets and confidential information are kept when not in use.

24.     In addition, Balchem employees are directed not to remove physical hard copy documents containing trade secrets and confidential information from Balchem premises without an essential need to do so.  Employees are directed to refrain from emailing or otherwise transferring trade secrets and confidential information to their personal computers.  Balchem employees are instructed to access trade secret or confidential information through a virtual private network or other secure system when working remotely.

25.     Upon departure, Balchem employees are instructed to surrender all electronic devices and physical or digital documents and information that contain trade secrets or confidential information.

26.     All Balchem employees are subject to an employee handbook that reaffirms their obligation to protect Balchem's trade secrets and confidential information.

27.     Edwards was the Director of Sales, Plant Products Division for Albion, both before and after Balchem acquired Albion.

28.     In his role as Director of Sales, Plant Products Division, Edwards had extensive access to and knowledge of Balchem's trade secrets.  Specifically, Edwards had extensive knowledge of Balchem's suppliers, customers, product formulations, and manufacturing methodology.

**The Balchem Acquisition and the CNNA**

29.     While he was employed by Balchem, Edwards executed a Balchem Corporation Confidentiality, Non-Solicitation, and Non-Competition Agreement (the "CNNA") as consideration for his continued employment, salary, and benefits while employed with Balchem.

30.     Section 2(a) of the CNNA provides:

The Employee acknowledges and agrees that, as a result of the nature of Balchem's business and the nature of the Employee's position with Balchem, the Employee has been in contact with and has learned and accessed, and will continue to come into contact with and learn and access, various technical and non-technical information, plan, programs, designs, formulations, processes, product information, trade secrets and other confidential information (collectively the "Confidential Information") which are unique to, and the property of, Balchem. The Confidential Information includes, but is not limited to, Balchem's methods, procedures, processes, programs, marketing, Customer Information (as that term is defined below), markets, sales, business projects, and plans for future business and other development, research, non-public financial information, and other non-public means used by Balchem in the conduct of its business.  All of the aforementioned Confidential Information is not generally known to the public with respect to Balchem and has been developed, acquired, and compiled by Balchem at its great effort and expense.

31.     Section 2(c) of the CNNA provides that Edwards would:

hold all Confidential Information and any records and documents containing the same, in the strictest confidence, and that he or she will safeguard and not disclose, divulge, or reveal said Confidential Information to any person or persons whomsoever, either during the Employee's employment or at any time after the termination of his or her employment with Balchem, whether such termination is voluntary or involuntary, except as authorized by Balchem.

32.     Section (6)(b) of the CNNA provides:

The Employee covenants and agrees that any breach of any of the foregoing covenants may cause Balchem great and irreparable harm.  Consequently, in the event of any such breach, the Employee consents to the entry of an appropriate temporary and/or permanent injunction in a court of appropriate jurisdiction without the necessity of posting a bond or other security to the extent permitted by applicable law.  Such injunction shall be in addition to and not in lieu of any other relief to which Balchem may be entitled under law.

33.     Section (8) of the CNNA provides:

This Agreement shall be governed by and construed in accordance with the laws of the State of New York.  The parties, being desirous of having any disputes resolved in a forum having a substantial body of law and experience with matters contained herein, agree that any action or proceeding with respect to this agreement shall be brought in the Supreme Court of the State of New York, County of Orange, or in the United States District Court for the Southern District of New York, and the parties agree to the jurisdiction thereof.

34.     Edwards signed the CNNA on March 18, 2016, and Balchem countersigned it on April 11, 2016.

35.     Edwards resigned his employment with Balchem on April 15, 2016.  His employment with Balchem ended on May 13, 2016.

36.     Edwards resigned his employment for the purpose of forming his own company to develop, manufacture, and sell plant nutrition products.

**The 2016 Lawsuit**

37.     On November 16, 2016, Balchem and Albion filed a Complaint and Demand for Jury Trial (the "2016 Complaint") against Edwards in the United States District Court for the Southern District of New York.

38.     The 2016 Complaint alleged that during his employment with Albion and Balchem, Edwards was working to develop a business selling plant nutrition products to the agricultural industry.

8

39.     The 2016 Complaint alleged that Edwards arranged a visit to a key Albion supplier in person with the intention of furthering his own interests ahead of those of his then-employer, Albion.  The 2016 Complaint also alleged that Edwards took an unusual number of trips during the first quarter of 2016 to visit Balchem customers and distributors for the purpose of strengthening Edwards' relationship with those customers and distributors to further his work developing a business selling plant nutrition products in the agricultural industry.

40.     The 2016 Complaint alleged that after resigning his employment with Balchem, Edwards contacted or attempted to contact multiple key sales employees of Balchem in an attempt to solicit their employment for Edwards' new company.

41.     The 2016 Complaint alleged that Edwards then manufactured or planned to manufacture products using Balchem's trade secret formulations and methodologies and confidential business information.

42.     The 2016 Complaint alleged that Edwards then intended to sell agricultural products to Balchem's customers using Balchem's trade secret formulations and methodologies and confidential business information.

43.     The 2016 Complaint alleged Edwards was then preparing to compete or already competing with Balchem using Balchem's trade secrets and other confidential business information.

44.     The 2016 Complaint asserted counts for misappropriation of trade secrets, breach of the CNNA, breach of the covenant of good faith and fair dealing in negotiating the CNNA, declaratory judgment with respect to any developments by Edwards, declaratory judgment with respect to equitable tolling of the CNNA, breach of fiduciary duty, and breach of contract with respect to Edwards' Retention Agreement.

9

45.     After filing the 2016 Complaint, counsel for Balchem and Albion sent a copy of the 2016 Complaint to counsel for Edwards.

**The 2017 Settlement**

46.     On or about March 27, 2017, Balchem, Albion, and Edwards entered into a Mutual General Release and Settlement Agreement (the "2017 Settlement Agreement").

47.     In the 2017 Settlement Agreement, Edwards acknowledged the CNNA was "the extant agreement, which governs the relationship of the parties hereto."

48.     The Parties agreed that the terms of the 2017 Settlement Agreement and the CNNA Addendum would be confidential.

49.     On March 27, 2017, as part of the settlement of the claims asserted against Edwards in the 2016 Lawsuit, Balchem, Albion, and Edwards entered into an Addendum and Modification Agreement Balchem/Albion-Todd Edwards (previously defined herein as the "CNNA Addendum").

50.     In the CNNA Addendum, Edwards acknowledged that certain ingredients, approaches and techniques in the formulation of Balchem products were trade secrets, see Section 2(a) of the CNNA Addendum.

51.     In the CNNA Addendum, in order to protect Balchem's confidential information and trade secrets, Edwards agreed not to develop, manufacture, or sell products containing or using certain secret ingredients used in Balchem product formulations, see Section 2(a) of the CNNA Addendum.

52.     In the CNNA Addendum, Edwards agreed not to duplicate any Balchem product formulations that existed at the time of his employment with Balchem, see Section 2(f) of the CNNA Addendum.

53.     In the CNNA Addendum, Edwards agreed not to develop, manufacture, or sell certain products relying on Balchem's confidential or proprietary information, see Section 2(b) of the CNNA Addendum.

54.     In the CNNA Addendum, Edwards agreed that actions taken by an entity in breach of the CNNA Addendum would be deemed breaches by Edwards directly, see Section 2(k) of the CNNA Addendum.

55.     The secret ingredients and other Balchem confidential information and trade secrets expressly referred to in the CNNA Addendum or otherwise at issue in this lawsuit have not entered the public domain.

**Edwards Misappropriates Trade Secrets and Breaches the Parties' Agreements**

56.     On information and belief, despite his acknowledgement that certain Balchem ingredients, techniques and approaches were Balchem trade secrets, since settling the 2016 Lawsuit, Edwards has used those very same ingredients, techniques, and approaches in formulating his own competing products.

57.     On information and belief, since settling the 2016 Lawsuit, Edwards has disregarded his contractual obligations to Balchem.

58.     On information and belief, since settling the 2016 Lawsuit, Edwards and Mil Agro are marketing formulations of various products relying on Balchem's trade secrets and confidential and proprietary information, in violation of at least Section 2(b) of the CNNA Addendum, the Utah Uniform Trade Secrets Act, and the Defend Trade Secrets Act.

59.     On information and belief, since settling the 2016 Lawsuit, Edwards and Mil Agro are developing, marketing, and selling products that use ingredients or techniques Edwards agreed not to use in the CNNA Addendum, in violation of at least Section 2(a) of the CNNA Addendum, the Utah Uniform Trade Secrets Act, and the Defend Trade Secrets Act.

60.     On information and belief, since settling the 2016 Lawsuit, Edwards and Mil Agro are marketing formulations of products that Edwards agreed not to sell in the CNNA Addendum, thereby breaching the CNNA Addendum, in violation of at least Section 2(f) of the CNNA Addendum, the Utah Uniform Trade Secrets Act, and the Defend Trade Secrets Act.

61.     Further, since settling the 2016 Lawsuit, Edwards has marketed his products to existing Balchem customers by telling them that his products are "the same" as Balchem's Metalosate® products "only cheaper."  If true, these statements constitute an admission that Edwards and Mil Agro misappropriated Balchem's secret Metalosate® formulations in developing, manufacturing, and selling competing products.

**False and Misleading Advertising by Edwards and Mil Agro**

62.     Balchem uses a chemical process known as chelation to bind inorganic metal atoms to an organic compound.  Balchem uses chelation in its line of foliar plant fertilizers to efficiently and effectively deliver micronutrients to high-value crops and ensure the uptake of micronutrients.  Balchem's line of chelated plant fertilizer is marketed under the registered mark Metalosate®.  Chelation allows for effective foliar, as opposed to soil-based, application of micronutrients to plants.

63.     The Metalosate® line of products consists of 14 different foliar fertilizers. Each fertilizer chelates one or more metals (zinc, copper, etc.) to amino acids.  The metals are necessary micronutrients for plants.  The amino acids act a shield, protecting the metal ions from the environment to ensure that the metal ions reach the plant in a state that is useful for plant nutrition.

64.     The fact that Balchem's products use amino acid chelates sets Balchem apart in the marketplace and make its products superior to competitors' products.

12

65.     According to its website, Mil Agro advertises eight products using the trade name "Keylamax."

66.     Part of Mil Agro's marketing of its Keylamax Calcium product is a Safety Data Sheet (SDS) posted to Mil Agro's website.  The SDS for the Keylamax Calcium 8% product claims that the "chemical description" of the product is "Liquid amino acid calcium chelated micronutrient."

67.     The Keylamax Calcium 8% SDS is available on Mil Agro's website for potential customers to see.

68.     The SDS and/or product labels for Keylamax Magnesium, Zinc, Manganese, Calcium Organic, and Zinc Organic assert that they contain amino acid chelates.  These SDS and product labels are available on Mil Agro's website for potential customers to see.

69.     In fact, there is no significant amount of amino acid present in a product Mil Agro sold to at least one customer.  However, the product label for that product falsely claims that the product is chelated.

70.     On information and belief, the representations made by Edwards and Mil Agro in advertising and marketing materials concerning the chelation of their other products are also false because the other product do not contain significant amounts of amino acid chelates.

71.     On information and belief, Edwards and Mil Agro have made false and misleading representations regarding the Keylamax products in order to make them more marketable and to compete with Balchem's Metalosate® product line.

72.     On information and belief, Edwards and/or Mil Agro has falsely advertised Mil Agro's Keylamax products as being "the same" as Balchem's Metalosate® products "only cheaper."

73.     In fact, on information and belief, none of Mil Agro's Keylamax products are literally "the same" as Balchem's Metalosate® products.  Upon information and belief, Edwards and/or Mil Agro intentionally made false claims comparing Keylamax to Metalosate® to influence consumers to purchase Keylamax over Metalosate® for cost savings.

74.     On information and belief, Edwards and/or Mil Agro has falsely advertised Mil Agro's Keylamax products to at least one customer as having "activated amino acids."  On information and belief, the Keylamax products do not contain significant amounts of amino acids.  Therefore, on information and belief, the Keylamax products do not contain "activated amino acids."

75.     In marketing materials, Mil Agro claims that "Keylamax amino acid complexes use amino acid chelation technology."

76.     On information and belief, the statement in Mil Agro's marketing materials that "Keylamax amino acid complexes use amino acid chelation technology" is literally false.

77.     On information and belief, the marketing statement that "Keylamax amino acid complexes use amino acid chelation technology" materially misrepresents an inherent characteristic of the product.

78.     In marketing materials, Mil Agro describes two studies done at the University of California, Davis concerning the effectiveness of chelation on plant nutrition and amino acid uptake.

79.     On information and belief, the descriptions of studies done at UC Davis contained in Mil Agro's marketing materials are impliedly false.  The inclusion of summaries of studies of products containing amino acid chelates in marketing materials for products that, on information

14

and belief, do not contain amino acid chelates misleads consumers into believing that Keylamax products contain amino acid chelated minerals, which, upon information and belief, they do not.

80.     The marketing materials that use the UC Davis study materially misrepresent an inherent characteristic of the product.

81.     Through marketing materials, Mil Agro falsely represents that "There is more than 50% more calcium in Keylamax™ than in other brands."  This representation is literally false.  On information and belief, Keylamax Calcium 8% contains 8% calcium.  Mil Agro's marketing materials state, "If you look at other brands you will see that they have up to 6%."  Eight is approximately 33% more than six.  Eight is not 50% more than six.

82.     If Keylamax Calcium 8% contains 8% calcium, then Keylamax Calcium 8% contains approximately 33% more calcium than a competing product containing 6% calcium.

83.     The representations in Mil Agro's advertising materials mislead consumers into believing that they are receiving a more potent and effective fertilizer than they are actually buying.

84.     The representations in Mil Agro's advertising materials mislead customers with respect to an inherent characteristic of the product.

85.     The "other brands" referenced in Mil Agro's advertising materials are not named.  However, the advertising materials refer to a brand that has "up to 6%" calcium concentration.  Consumers would recognize this is a reference to Balchem's products.

86.     Balchem's Metalosate® Calcium contains 6% calcium and has a density of 1.22 g/mL.  These are the exact figures used for a comparison to "other brands" in Mil Agro's advertising materials.

87.     Based on the false representation that Mil Agro's products contain 50% more calcium, Mil Agro's advertising materials also claim that "What this means for you is a lot more bang for your buck."  This statement in Mil Agro's advertising materials is misleading.  This statement in Mil Agro's advertising materials misleads consumers into believing that Mil Agro's products are more effective for their price than Balchem's Metalosate® products.  On information and belief, Mil Agro's products are not more effective for their price than Balchem's Metalosate® products.

88.     The use of the name Keylamax, in conjunction with the product labels and/or SDS for the Keylamax products that refer to the products as "liquid amino acid [metal] chelated micronutrients," misleads customers into believing that the Keylamax products are chelated.

89.     The use of the name Keylamax in conjunction with the product labels and/or SDS for the Keylamax products materially misrepresents an inherent characteristic of the products.

90.     On information and belief, consumers have purchased products from Mil Agro on the basis of the false and misleading material representations concerning the nature of Mil Agro's products.

91.     The false and misleading statements contained in Mil Agro's advertising materials are material to consumers' purchasing decisions.

### Count I – Misappropriation of Trade Secrets (DTSA and UT-UTSA)

92.     Plaintiffs repeat and re-allege the preceding paragraphs and incorporate them herein by reference.

93.     Balchem's product formulations and manufacturing information are trade secrets within the definition of 18 U.S.C. § 1839(3) and U.C.A. § 13-24-2(4) because Balchem has taken reasonable measures to keep the information secret, and the information derives both actual and potential economic value from not being generally known to or, and not being readily

16

ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

94.     On information and belief, Edwards and Mil Agro have actually misappropriated Balchem's trade secrets by, among other things, using Edwards' knowledge of Balchem's trade secrets to develop and market competing plant nutrition products after Edwards settled the 2016 Lawsuit.

95.     Since settling the 2016 Lawsuit, Balchem has suffered damages as a result of Edwards' and Mil Agro's misappropriation of Balchem's trade secrets.

96.     Edwards' and Mil Agro's misappropriation and use of Balchem's trade secrets after settling the 2016 Lawsuit was willful and malicious.  Through Edwards' long tenure as an employee of Balchem, he was aware of the value of the trade secrets and the harm it would cause Balchem if they were misappropriated.  The value of Balchem's trade secrets was reinforced to Edwards when Balchem filed the 2016 Lawsuit, and Edwards reaffirmed the secret nature of Balchem's trade secrets through the Settlement Agreement and the CNNA Addendum. Nevertheless, Edwards and Mil Agro used Balchem's trade secrets to develop their business selling plant nutrition products.  As a result of this willful and malicious misappropriation, the Court may award multiple damages and attorney's fees under 18 U.S.C. §§ 1836(b)(3)(C) & 1836(b)(3)(D) and U.C.A. §§ 13-24-4(2) & 13-24-5.

**Count II – Breach of Contract (CNNA and CNNA Addendum)**

97.     Plaintiffs repeat and re-allege the preceding paragraphs and incorporate them herein by reference.

98.     Since entering into the CNNA, Balchem fully performed under the CNNA.

99.     Since entering into the CNNA Addendum, Balchem has fully performed under the CNNA Addendum.  Among other things, Balchem released claims it had asserted against

17

Edwards in the 2016 Lawsuit and filed a voluntary dismissal of those claims with prejudice as provided in the Settlement Agreement.

100.    Edwards has breached the confidentiality covenant in the CNNA by using misappropriated confidential and trade secret information of Balchem for his own personal benefit and without permission after settling the 2016 Lawsuit.

101.    Edwards has breached the CNNA Addendum by developing, manufacturing, and selling products that include Balchem's secret ingredients.

102.    Edwards has breached the CNNA Addendum by developing and selling products that rely on Balchem proprietary, confidential, or trade secret information.

103.    Edwards has breached the CNNA Addendum by copying or duplicating Balchem's proprietary, confidential, or trade secret product formulations.

104.    The actions described herein taken by Mil Agro are imputed to Edwards and constitute breaches of the CNNA Addendum by Edwards through the CNNA Addendum.

105.    As a result of this breach, Balchem has suffered damages.

### Count III – False Advertising (Lanham Act)

106.    Plaintiffs repeat and re-allege the preceding paragraphs and incorporates them herein by reference.

107.    The literal and implied falsehoods regarding Keylamax and other products offered for sale by the defendants constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

108.    The literal and implied falsehoods regarding Keylamax and other products offered for sale by the defendants are likely to influence the purchasing decisions of customers of fertilizer.

18

109.    The literal and implied falsehoods have damaged and will continue to damage the pecuniary interests of Balchem.

110.    If Defendants are permitted to continue making these literal and implied falsehoods, Balchem will suffer irreparable harm for which it has no adequate remedy at law.

111.    As a result of Defendants' wrongful conduct, Plaintiffs are entitled to preliminary and permanent injunctive relief, recovery of Defendants' profits obtained as a result of their false advertising, damages in an amount to be determined at trial, recovery of all attorneys' fees and costs incurred, and such corrective advertising as the Court deems proper.

**Request For Relief**

112.    Plaintiffs respectfully request the Court:

A.    Award Plaintiffs actual damages, attorney's fees, and punitive damages in an amount to be determined at trial.

B.    Enjoin Edwards and Mil Agro, Inc. from continued use of Balchem's trade secrets.

C.    Enjoin Edwards, Mil Agro, Inc., and their agents, servants, employees, or all persons in active concert or participation with them from referring to any of his products as "chelated" in any tense, form or comparison.

D.    Enjoin Edwards, Mil Agro, Inc., and their agents, servants, employees, or all persons in active concert or participation with them from claiming that their product contains 50% more calcium than competitor's products containing 6% calcium, including but not limited to Balchem's Metalosate® product.

E.    Enjoin Edwards, Mil Agro, Inc., and their agents, servants, employees, or all persons in active concert or participation with them from advertising their products as "the same" as Balchem's Metalosate® products.

19

F.      Order Edwards, Mil Agro, Inc., and their agents, servants, employees, or all persons in active concert or participation with them to immediately send corrective statements in a form approved by the Court to all persons to whom it directly made false and misleading statements and order that all future advertising (including Mil Agro's website) include disclaimers in a form approved by the Court.

G.      Enjoin Edwards, Mil Agro, Inc. and their agents, servants, employees, or all persons in active concert or participation with them from selling products under the name Kelamax.

H.      Award Plaintiffs damages as a result of the defendants' violation of Section 43(a) of the Lanham Act, 42 U.S.C. § 1125(a).

I.      Award Plaintiffs their reasonable attorneys' fees incurred in connection with this action.

J.      Award Plaintiffs such other relief as the Court may deem appropriate.

**<u>PLAINTIFFS DEMAND A JURY TRIAL ON ALL COUNTS SO TRIABLE</u>**

Dated: March 26, 2018

BALCHEM CORPORATION and
ALBION LABORATORIES, INC.
By their attorneys,


s/ Christina Joy F. Grese
Christina Joy F. Grese
Duane Morris LLP
1540 Broadway
New York, NY 10036-4086
Tel: 212-692-1057
Fax: 212-409-8602
Email: CJGrese@duanemorris.com

Of Counsel
Michael R. Gottfried
Gregory S. Bombard
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
Tel: 857-488-4200
Fax: 857-488-4201
mrgottfried@duanemorris.com
gbombard@duanemorris.com

*Attorneys for Plaintiffs*